UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANK T. WILLIAMS,

                Petitioner,

v.                                     Case No. 3:20-cv-178-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.

---

## **ORDER**

### **I. Status**

Petitioner Frank T. Williams, an inmate of the Florida penal system, initiated this action on February 14, 2020,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Williams challenges a 2016 state court (Duval County, Florida) judgment of conviction for burglary of a dwelling. He raises three claims. See Petition at 5-15. Respondents have submitted a memorandum in opposition to the Petition. See Response (Doc. 7). They also submitted exhibits. See Doc. 7-1. Williams filed a brief in reply, see Reply (Doc. 8), with an exhibit, Doc. 8-1.  His Petition is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On January 20, 2016, the State of Florida charged Williams with burglary of a dwelling in Duval County case number 2015-CF-11178. Doc. 7-1 at 9. Williams pled guilty to the charge on May 12, 2016. Id. at 16; see id. at 19-45, Transcript of the Plea and Sentencing Proceeding. That same day, the court sentenced Williams to a term of imprisonment of ten years. Id. at 47-52, Judgment. Williams filed a motion for reduction of sentence pursuant to Florida Rule of Criminal Procedure 3.800 on July 6, 2016, id. at 54-56, and the court denied that motion on August 28, 2017, id. at 58-59. During the pendency of the Rule 3.800 motion, Williams appealed his sentence. Id. at 71, 75. On September 27, 2016, the First District Court of Appeal (First DCA) directed Williams to show cause why the appeal should not be dismissed as untimely. Id. at 78. When Williams failed to respond, the First DCA dismissed the appeal on December 12, 2016. Id. at 79.

On December 21, 2016, Williams filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Id. at 84-95. The court dismissed the Rule 3.850 motion without prejudice on June 9, 2017, finding it to be facially insufficient, but gave Williams leave to amend. Id. at 96. He filed a pro se amended Rule 3.850 motion on October 9, 2017. Id. at 98-109. In his amended Rule 3.850 motion, Williams asserted that his trial counsel was ineffective because she failed to: investigate Williams' alibi

2

(ground one); subpoena his and Jerry Driggers' cell phone records (ground two); and request that Williams undergo a competency evaluation (ground three). On December 4, 2017, the postconviction court denied Williams' request for postconviction relief. Id. at 110-14. The First DCA affirmed the trial court's denial of postconviction relief per curiam on January 7, 2020, id. at 153, and issued the mandate on February 4, 2020, id. at 155.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the

Court. Because the Court can "adequately assess [Williams'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is

unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a

"contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see Teasley v. Warden, Macon State Prison, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020). Also, deferential review under § 2254(d) generally is limited to the record that was

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92), cert. denied, 140 S. Ct. 394 (2019). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby

7

prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. Additionally, the United States Supreme Court has long recognized that <u>Strickland</u>'s two-part inquiry applies to ineffective-assistance-of-counsel claims arising out of the plea process. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985). The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the

<u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one of the Petition, Williams asserts that counsel (Katherine Littell Hinchey, Florida Bar #675881) failed to request that Williams undergo a competency evaluation when she knew about his mental health history. Petition at 5-7. He states that he "suffers from an inability to reason clearly," and therefore he was unable "to adequately articulate his innocence" to her. Id. at 6. According to Williams, a competency evaluation would have ensured that he "was fully aware of the charges" and "the strengths and weaknesses of the State's case." Id. Williams raised the ineffectiveness claim in his amended Rule 3.850 motion as ground three. Doc. 7-1 at 107-08. The postconviction court denied the amended Rule 3.850 motion with respect to the claim, stating in pertinent part:

The judgment at issue was rendered on or about May 12, 2016, after defendant entered a negotiated plea to one [c]ount of second-degree burglary to a dwelling, a violation of Section 812.02(3)(b), Florida Statutes (2015). . . .

In Ground Three of his motion, defendant apparently argues that his trial counsel was ineffective in not having him evaluated as to competency to proceed and that had she done so, defendant would have been found incompetent and thus the outcome of the proceedings would have been different. Defendant's motion does not specify how the outcome would have been different. More importantly, however, the transcript of the plea colloquy demonstrates that defendant's trial counsel did adequately investigate and consider defendant's competence. This issue is discussed between the Court and trial counsel for defendant at pages seven and eight of the transcript of the change of plea hearing on or about May 12, 2016.[3] Trial counsel indicated that defendant was committed to a state hospital in 2007. However, defendant was apparently restored to competency and was sentenced to more than one crime in the period between 2007 and the date of sentencing in this case in 2016. Defendant's counsel had stated that she had spoken to her client numerous times and that she believed him to be competent and had no concerns about him being incompetent. After the one instance in which the defendant had been previously adjudicated incompetent to proceed, defendant had been adjudicated guilty of other crimes in the intervening period between 2007 and 2016.

The Court thus finds from a review of the plea hearing, that defendant's claims that his attorney did not adequately investigate his competence to proceed are conclusively refuted by the record. The transcript

---

[3] See Doc. 7-1 at 121-22.

of the change of plea hearing on May 12, 2016 is
attached to this order as Exhibit A. . . .[4]

Id. at 110-12. The First DCA affirmed the postconviction court's denial of relief.

To the extent that the appellate court decided Williams' claim on the merits,[5] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Williams is not entitled to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Williams' ineffectiveness claim is still meritless. There is a strong presumption in favor of an attorney's competence when evaluating the performance prong of the Strickland ineffectiveness inquiry. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or

---

[4] See Doc. 7-1 at 115-41.
[5] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Williams must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

At the plea hearing, the following discussion transpired.

> THE COURT: Do you feel well enough to go forward and make an informed decision?
>
> THE DEFENDANT: Yes, sir.

THE COURT: Have you ever been diagnosed with a mental illness or something like that?

THE DEFENDANT: Yes, sir.

THE COURT: And how long ago was that; do you remember?

THE DEFENDANT: My whole life.

THE COURT: Are you familiar with his mental history?

MS. HINCHEY [(DEFENSE COUNSEL)]: Yes, Your Honor. He did go to the state hospital in Chattahoochee on an older case. I want to say it was in 2007, but I could be incorrect about that. He went to the hospital. He came back. He was sentenced. He has been sentenced to other things in between the time without any commitment, and I have talked to him numerous times. I think that he is competent to proceed.

THE COURT: You believe he is competent?

MS. HINCHEY: Yes, I do.

THE COURT: You have no concerns about that?

MS. HINCHEY: No, sir, and I did make sure to thoroughly go back and look at all of the times. He has only been adjudicated incompetent that one time from all of the records I was able to see.

THE COURT: And then he's been adjudicated of other things in the meantime since then?

MS. HINCHEY: That's correct, Your Honor.

14

Id. at 25-26. Notably, Williams points to no evidence suggesting that he was not competent at the time.

On this record, Williams has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming arguendo deficient performance by defense counsel, Williams has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Williams asserts he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Williams is not entitled to federal habeas relief on the ineffectiveness claim raised in ground one.

## B. Grounds Two and Three

As ground two, Williams asserts that counsel was ineffective because she failed to investigate his "iron-clad alibi," which caused him "to miscomprehend the strength of the State's case and [] enter an involuntary plea." Petition at 9. He maintains that he did not burglarize Walker's home. Id. According to Williams, he was with Uncle Joiner "most of the day of the burglary," and Uncle Norman and Jerry Driggers "lied when they involved him in the crime." Id. As ground three, Williams asserts that counsel was ineffective because she failed to subpoena his own cell phone records as well as those for Driggers' cell phone. Id. at 13-15. According to Williams, counsel could have impeached

Driggers' testimony that he received a call from Williams prior to the burglary.

Id. at 14. Williams raised the ineffectiveness claims in his amended Rule 3.850

motion as grounds one and two. Doc. 7-1 at 103-07. The postconviction court

denied the amended Rule 3.850 motion with respect to the claims, stating in

pertinent part:

> In Ground One, defendant argues that his trial counsel rendered constitutionally ineffective assistance by failing to investigate defendant's alibi defense, thereby causing defendant to misapprehend the strengths of the state's case and enter an involuntary plea. Defendant is barred from relief on this ground because of his sworn testimony during the colloquy of the trial judge at his plea hearing. In that colloquy, the defendant stated under oath that there was nothing that he had asked or expected his attorney to do, such as finding a witness or filing a motion or taking a deposition, that the attorneys had not done, but that defendant believed still needed to be done before he would be comfortable entering a plea. Defendant denied that there was any such action expected of his attorneys. See transcript of change of plea hearing on May 12, 2016 at page 18.[6]
>
> It is well settled that defendant may not seek to go behind his sworn testimony at a plea hearing in a motion seeking post-conviction relief. See Stano v. State, 520 So. 2d 278, 280 (Fla. 1988); [] Smith v. State, 41 So. 3d 1037 (Fla. 1st DCA 2010). Ground One of defendant's motion is conclusively refuted by the record and provides no basis for relief.
>
> In Ground Two of his motion defendant again raises the argument that his attorney's failure to subpoena cell phone records was ineffective and

---

[6] See Doc. 7-1 at 132.

rendered his guilty plea involuntary. This ground is conclusively refuted by the plea colloquy for the reasons stated as to Ground One. Ground Two states no basis for relief.

Id. at 110-11. The First DCA affirmed the postconviction court's denial of relief.

To the extent that the appellate court decided Williams' claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Williams is not entitled to relief on the basis of the ineffectiveness claims.

Nevertheless, even if the appellate court's adjudication of the claims is not entitled to deference, Williams' ineffectiveness claims are without merit because the record supports the postconviction court's conclusions. At the plea hearing, Williams engaged in the following colloquy with the court.

> THE COURT: Do you feel pressured, intimidated or coerced by anybody or circumstance into doing this?

> THE DEFENDANT: No, sir.

> THE COURT: Is there anything that you have asked or expected your attorney to do such as finding

a witness or filing a motion or taking a deposition, anything like that that you think that hasn't been done that you think still needs to be done before you feel comfortable entering the plea?

THE DEFENDANT: No, sir.

THE COURT: Are you satisfied with the services of your counsel?

THE DEFENDANT: Yes.

Id. at 36. The defense did not object to the State's proffered factual basis to support the guilty plea. Id. at 38-39. Next, the court stated in pertinent part:

THE COURT: Well, based upon the proffer by the state, as well as the matters stated in the arrest and booking report in the court file of which I take judicial notice, I find that there is a sufficient factual basis to support the plea of guilty here in this case.

. . . .

Okay, based upon the dialogue here and the extensive discussion, I find that the defendant does have the intelligence to understand his rights. He was then carefully advised, I can tell, by Ms. Hinchey about it, based on what she said or my discussions with him, he does appear to understand the nature of the charge and the maximum penalty he faces and the impact of that PRR statute and how this negotiated sentence agreement works and the context of the choices he is making, and that I find that he is not under the influence of any drug or substance. He appears to be alert and oriented well, a good demeanor, and that I find, thus, that he has entered into this plea of guilty and negotiated sentence agreement knowingly, intelligently, voluntarily and freely understands, again, the nature of the burglary charge[] and the PRR

> statute and also the consequences of his plea, so I accept his plea as having been voluntarily entered.
>
> Okay, then turn to the charge itself. They charged you in the information of burglary to a dwelling, and how do you plead in response to that charge, Mr. Williams?

Id. at 39-41. Williams pled "guilty" and affirmed that he was in fact guilty of the burglary. Id. at 41. The court accepted his plea "as voluntary." Id. at 42.

Williams has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. "A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case," and "[w]hat is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007) (citation omitted). Indeed, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court).

Even assuming arguendo deficient performance by defense counsel for failing to act as Williams suggests, Williams has not shown any resulting prejudice. He has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial." <u>Hill</u>, 474 U.S. at 59. If Williams had proceeded to trial, and the jury had found him guilty, he would have faced a possible term of fifteen years imprisonment, a fact the court discussed with him during the change of plea hearing. <u>See</u> Doc. 7-1 at 27 ("That is the hammer that drove the negotiations that led your attorney to negotiate, advocate that you take the ten years, because if you had gone to trial and lost, it would have been no less than 15."). Additionally, the court advised Williams that "it would have been day for day 15 years and no time off for good behavior, no 85 percent of the sentence." <u>Id.</u> at 28. Instead, it "would have been 100 percent of the 15 years" that he would have served. <u>Id.</u> Williams stated that he understood the plea agreement, the risk of trial, and his sentence exposure if he proceeded to trial and lost, and affirmed that the plea agreement was acceptable. <u>Id.</u> On this record, his ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Williams is not entitled to federal habeas relief on the ineffectiveness claims raised in grounds two and three.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Williams seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Williams "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El</u>, 537 U.S. at 335-36 (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Williams appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of November, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-1 11/7
c:
Frank T. Williams, FDOC #132638
Counsel of Record

22